JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Whitney Postman

## DEFENDANTS

LaSalle University

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Caren N. Gurmankin, Esquire
Console Law Offices LLC
1525 Locust Street
9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §2000e, et seq. ("Title VII")

Brief description of cause:
Plaintiff is alleging sex discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   n/a

JUDGE                                    DOCKET NUMBER

DATE
December 17, 2014

SIGNATURE OF ATTORNEY OF RECORD
Caren N. Gurmankin, Esquire

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CONSENT TO RECEIVE NOTICE OF ORDERS AND JUDGMENTS IN CIVIL AND
CRIMINAL CASES BY MEANS OF FACSIMILE TRANSMISSION
AND WAIVER OF PROVISIONS OF FED.R.CIV.P. 77(d) OR FED.R. CRIM.P. 49(c)
PROVIDING FOR SAID NOTICE BY MEANS OF MAIL

TO THE CLERK OF COURT:

I hereby waive the provisions of Fed.R.Civ.P. 77(d) or Fed.R.Crim.P. 49(c)

providing for notice of the entry of Orders or Judgments by mail in the manner provided by

Fed.R.Civ.P. 5 or Fed.R.Crim.P. 49(c), and consent that notice may be given to me, in all pending

and future civil or criminal cases in which I enter my appearance, by the Clerk of Court by

facsimile in lieu of notice by means of mail. I understand that this form, when executed, will serve

as Notice to and Authorization for the Clerk of Court to keep this information on file for all

pending and future civil or criminal cases in which I enter my appearance.

I hereby confirm, by execution of this form, that I understand that it is my

responsibility to notify the Clerk of Court, in writing, of my current address and facsimile number.

Caren N. Gurmankin, Esquire
Name (Printed)
Console Law Offices LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19012
Address (Printed)

205900
Bar Id Number

(215) 545-7676
Telephone Number

Address (Printed)

(215) 565-2853
FAX Number

December 17, 2014
Date

Signature

UNITED STATES DISTRICT COURT                    APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Whitney Postman, Philadelphia, PA 19102

Address of Defendant: LaSalle University, 1900 West Olney Avenue, Philadelphia, PA 19141

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))      Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?      Yes ☐   No ☒
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
      Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
      Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
      Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

| A. *Federal Question Cases:* | B. *Diversity Jurisdiction Cases:* |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☒ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☐ All other Federal Question Cases (Please specify) | |

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Caren N. Gurmankin, Esquire , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: Dec. 17, 2014 _____     205900
                          Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: Dec. 17, 2014 _____     205900
                          Caren N. Gurmankin, Esquire

APPENDIX I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Whitney Postman | : | CIVIL ACTION |
| v.          Plaintiff, | : | |
| LaSalle University | : | NO. |
|            Defendant. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                                              ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                                                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                               (X)


| | | |
|---|---|---|
| Dec. 17, 2014 | Caren N. Gurmankin, Esquire | Plaintiff, Whitney Postman |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 545-7676 | (215) 565-2853 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WHITNEY POSTMAN**<br>**Philadelphia, PA 19102** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **LASALLE UNIVERSITY**<br>**1900 West Olney Avenue**<br>**Philadelphia, PA 19141** | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Whitney Postman, brings this action against her former employer,
LaSalle University ("Defendant").  During her employment with Defendant,
Plaintiff was discriminated against because of her sex, and retaliated against
based on her complaints about the same, in violation of Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the
Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.*
("PHRA").

### II.   PARTIES

1.     Plaintiff, Whitney Postman, is an individual and a citizen of the
Commonwealth of Pennsylvania.

2.     Plaintiff is female.

3.     Defendant, LaSalle University, is a private educational institution with its principal place of business at 1900 West Olney Avenue, Philadelphia, PA 19141.

4.     Defendant regularly does business in the Commonwealth of Pennsylvania.

5.     At all times material hereto, Defendant employed more than fifteen (15) employees.

6.     At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7.     At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

8.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

III.    **JURISDICTION AND VENUE**

9.     The causes of action which form the basis of this matter arise under Title VII and the PHRA.

10.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

11.    The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

12.    Venue is proper in the District Court under 28 U.S.C. §1391(b) and

42 U.S.C. §2000(e)-5(f).

13.     On or about July 23, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

14.     On or about September 22, 2014, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

15.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

16.     In or around February 2012, Plaintiff was hired by Defendant into the position of Assistant Professor, effective August 2012.  The position for which Plaintiff was hired was a tenure track position.

17.     Plaintiff reported to Barbara Amster, Chair, Speech Language Hearing Science Program.  Dr. Amster reported directly to Brian Goldstein, Dean, School of Nursing and Health Sciences.

18.     Upon the commencement of Plaintiff's employment, one (1) of her assignments was to teach the laboratory ("lab") sessions for a class that was

3

taught by a tenured, full-time professor (male) ("Professor") in Defendant's biology department. Plaintiff also assisted Professor with his lecture sessions for that class. She was supposed to attend the two (2) lecture sessions and the two (2) lab sessions every week, and in fact, she did so since the class commenced. As such, Plaintiff also had a reporting relationship to Professor.

19.    At all times material hereto, Plaintiff performed her duties in a highly competent manner.

20.    During her employment, Plaintiff was subjected to discriminatory comments and conduct because of her sex, including, but not limited to, the following:

(a)    During Professor's class lectures and in front of the students, he asked Plaintiff to say words in French, as he knew that she spoke the language, and then commented how "sexy" and "seductive" her accent sounded;

(b)    During Professor's class lectures and in front of the students, he stood very close to Plaintiff, put his arm around her, and whispered in her ear;

(c)    After class, Professor told Plaintiff to wait for him so that he could escort her out of the building. When Plaintiff tried to take the stairs, Professor told her that, because she was wearing high heels, he wanted her to take the elevator with him;

(d)    After class on the Friday before the Columbus Day weekend, 2012, which was a holiday at Defendant, Professor told Plaintiff that his department was having a happy hour, and he pressured her to attend the same. Professor had previously told Plaintiff that it was a Biology Department tradition

4

to meet for a happy hour on the Friday before Columbus Day, and he had previously invited her to the event on this particular day;

   (e) Due to Professor's pressure, Plaintiff agreed to attend the happy hour.  She stayed with Professor in his lab in which they had just taught a class session where she planned to do work until the happy hour;

   (f) When no one else showed up for the happy hour, Plaintiff asked Professor where his colleagues were.  He laughed and said that he forgot to invite anyone else;

   (g) Professor brought out a bottle of wine and said that the same was to celebrate Plaintiff's recent birthday.  Professor then drank a substantial amount of wine;

   (h) Professor brought out his guitar and played Plaintiff love songs;

   (i) Professor pressured Plaintiff to drink the wine that he brought;

   (j) Professor asked Plaintiff about her previous involvement with a dance group, commenting on the "asses" and "curves" of the dancers, and the "sexy" and "seductive" poses of the dancers and the "effect that that has on a guy;"

   (k) Professor sat down next to Plaintiff so closely that he was touching her;

   (l) Plaintiff felt so uncomfortable as a result of Professor's inappropriate conduct and his sexual advances that she made excuses and left

the lab; and,

      (m)    As Plaintiff left the lab, Professor told Plaintiff that she would never teach one (1) of his class sessions again.

21.    On or about October 22, 2012, about ten (10) days after the fake "happy hour," Professor sent Plaintiff multiple text messages and emails which included, but were not limited to, the following statements:

      (a)    Admitted that he made "a pass" at Plaintiff;

      (b)    Said that he thought that Plaintiff was "very pretty;" a "great dancer;" "endearingly vulnerable;" and, "sensitive;"

      (c)    Told Plaintiff that, "[o]ver the past couple of months, I have come to appreciate my dear colleague (you);"

      (d)    Said that Plaintiff was someone that he had "come to care about more than I realized and more than I should have;" and,

      (e)    Said that he "was such an ass hole and am ashamed of my lack of self control."

22.    Shortly thereafter, Plaintiff complained to Dr. Amster and Dean Goldstein regarding the sexually harassing conduct to which she was subjected.

23.    In response to Plaintiff's complaints, Dr. Amster reminded Plaintiff how important Professor was to Defendant's Speech Language Hearing Science Program.  Dean Goldstein sent Plaintiff Defendant's sexual harassment policy, and told her that Professor needed her to "forgive him" and that she should acknowledge Professor's apology.

24.    Dean Goldstein also told Plaintiff that she needed to confront

6

Professor.  When Plaintiff told Dean Goldstein that she was fearful of doing so because of Professor's conduct towards her and the fact that he was highly regarded at Defendant, Dean Goldstein said that she had to do so because "it's policy."

25.    On or about November 2, 2012, Plaintiff asked Professor if she could meet with him after class so that she could do as Dean Goldstein instructed.  When Plaintiff declined Professor's offer to meet in his office, as she was uncomfortable being alone with him, he slammed an object down on the counter of his classroom and yelled, "I don't believe this shit."

26.    When Professor and Plaintiff walked outside and she complained to him regarding the sex discriminatory conduct to which he subjected her, he became extremely hostile, including saying:

(a)    "You drank wine, too;"

(b)    "You have been disrespectful and aggressive;"

(c)    "This is just as much your fault;"

(d)    "You have been the professor from hell;" and,

(e)    "You should look in the mirror if you don't want to be a hypocrite."

27.    Professor also questioned Plaintiff repeatedly as to who she told about his sexually harassing conduct.

28.    Professor then told Plaintiff, for the first time, that he wanted her to restrict her attendance of his lectures in the class in which she was assisting him.

29.    Plaintiff complained to Dr. Amster and to Dean Goldstein regarding

Professor's hostile response to her complaint regarding his sex discriminatory conduct.  Dr. Amster's response was to tell Plaintiff that she needed to focus on her work, that Professor was just worried about his class and that he was very important to Defendant's Speech Language Hearing Science Program.

30.     On or about November 4, 2012, Professor told Plaintiff that he was changing her assignment so that, instead of teaching one (1) lab session per week, as Plaintiff had been doing since the semester started, she would now teach one (1) lecture session per week.  The lab sessions were generally considered to be more prestigious and challenging to teach, as they were worth more credits than the lecture sessions.

31.     Professor also told Plaintiff that he did not want her to attend any of his class sessions going forward, as she had been doing since the commencement of the semester, other than the one (1) that she would be teaching.

32.     Dr. Amster told Plaintiff that Professor was very upset about Plaintiff's complaint, and that she needed to agree to his terms to only teach one (1) lecture session per week.

33.     Dr. Amster treated Plaintiff differently than she had prior to Plaintiff's complaints regarding the sex discriminatory and retaliatory conduct to which she had been subjected, including, but not limited to, unjustly and harshly criticizing Plaintiff's performance and speaking to Plaintiff in a hostile manner.

34.     In or around December 2012, Plaintiff was told that Professor would continue teaching the class on which she had been assisting him during the

8

following academic year.  When Plaintiff commenced her employment with Defendant, she was told that the reason that she was assigned to assist Professor in teaching that class was so that she could take it over during the next academic year.

35.     On or about January 24, 2013, Dr. Amster and Dean Goldstein told Plaintiff that they had received complaints about her, and that she was "defensive," but they did not provide her with specific information regarding the same.  Plaintiff was told that she had one (1) week to submit a "mini-dossier" regarding all of her accomplishments and then the department faculty would vote during a special meeting on whether her employment with Defendant would continue.

36.     On or about February 11, 2013, Defendant informed Plaintiff that her contract was not going to be renewed for the following academic year and that her employment would end at the end of the Spring 2013 semester.  Plaintiff was told that the reason for the same was due to performance issues.

37.     Based on Defendant's continued discriminatory and retaliatory conduct, including its failure to take any remedial or corrective action regarding her complaints, Plaintiff resigned from her employment effective February 11, 2013.

38.     Shortly after Plaintiff's employment with Defendant was terminated, in or around March 2013, she complained to Defendant, again, regarding the sex discriminatory and retaliatory conduct to which she had been subjected.

39.     On or about July 1, 2013, Defendant notified Plaintiff that, as a

result of its investigation into her complaints, it concluded that Professor

"engaged in unwelcome conduct of a sexual nature towards" Plaintiff.  Despite

the same, Defendant also stated that its investigation did not "support a finding

by a preponderance of the evidence that [Professor's] conduct rose to the level of

a hostile work environment or that the decision not to renew your contract for the

2013-2014 academic year was related to your allegations regarding [Professor's]

conduct."

40.     Prior to Defendant informing Plaintiff that her contract would not be

renewed, Plaintiff was never informed of any corrective or remedial action,

including any investigations, undertaken by Defendant regarding her complaints.

41.     Defendant's asserted reason for failing to renew Plaintiff's contract

is pretextual.

42.     Plaintiff's sex was a motivating and/or determinative factor in

Defendant's discriminatory treatment of Plaintiff, including the hostile work

environment to which Plaintiff was subjected, and Defendant's failure to renew

Plaintiff's contract.

43.     Plaintiff's complaining of discrimination was a motivating and/or

determinative factor in Defendant's retaliatory treatment of Plaintiff, including the

hostile work environment to which Plaintiff was subjected, Defendant's failure to

renew Plaintiff's contract, and Plaintiff's constructive discharge.

44.     Defendant failed to prevent or address the discriminatory and

retaliatory conduct referred to herein and further failed to take corrective and

remedial measures to make the workplace free of discriminatory and retaliatory

conduct.

45.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

46.     The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable woman believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

47.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

48.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights, and its conduct warrants the imposition of punitive damages against Defendant.

## COUNT I - Title VII

49.     Plaintiff incorporates herein by reference paragraphs 1 through 48 above, as if set forth herein in their entirety.

50.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

11

51.     Said violations were malicious and/or with reckless indifference to Plaintiff's rights, and warrant the imposition of punitive damages.

52.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

53.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

54.     No previous application has been made for the relief requested herein.

## COUNT II - PHRA

55.     Plaintiff incorporates herein by reference paragraphs 1 through 54 above, as if set forth herein in their entirety.

56.     Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

57.     Said violations were intentional and willful.

58.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

59.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

60.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(i)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and;

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated:   12/17/14          BY:   _____

Stephen G. Console (36656)
Caren N. Gurmankin (205900)
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 545-8211 (fax)

Attorneys for Plaintiff,
Whitney Postman

Exhibit "1"

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | Q FEPA<br>X EEOC | 530·2013·03470 |

| STATE OR LOCAL AGENCY: **PHRC** |
|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>Whitney Postman | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP<br>Philadelphia, PA 19102 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>LaSalle University | NUMBER OF EMPLOYEES,<br>MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(215) 951-1000 |
|---|---|---|

| STREET ADDRESS<br>1900 West Olney Avenue | CITY, STATE AND ZIP<br>Philadelphia, PA 19141 | COUNTY<br>Philadelphia |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   QColor   X Sex   QReligion   QNational Origin<br>    X Retaliation   Q Age   Q Disability   QOther *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*          *Latest* 02/11/2013 |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondent as an Assistant Professor starting in or around August 2012. I reported to Barbara Amster, Chair, Speech Language Hearing Science Program. Dr. Amster reported directly to Brian Goldstein, Dean, School of Nursing and Health Sciences. I taught the lab sessions for a particular class that was taught by ███████, a tenured, full professor in Respondent's biology department. I also assisted Dr. ████████ during the lecture sessions of the class. In that capacity, I reported directly to Mr. ███████. I was told that the purpose of my assisting Dr. ████ with the class was so that I could take over teaching the same during the following academic year.

| X I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |

| Date: 7/22/13   *Charging Party (Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

2013 JUL 23  P 4: 40<br>RECEIVED - EEOC<br>PHILADELPHIA, D.O.



**EEOC Charge of Discrimination**
**Page 2 of 5**
**Initials of Charging Party --**

2.   **Harm Summary**

I believe that Respondent has discriminated against me because of my sex, and have retaliated against me based on my complaints about the same. Evidence of Respondent's discriminatory and retaliatory conduct includes, but is not limited to, the following:

a)   In front of the students in the class, Dr. ███ came very close to me, put his arm around me and whispered directly into my ear;

b)   In front of the students in the class, Dr. ███ invited me into his office for "private" conversations;

c)   During Dr. ███ class lectures, he requested that I pronounce words in French, as he knew that I spoke that language, and then he discussed how "seductive" and "sexy" my accent sounded;

d)   After class, Dr. ███ insisted that I wait for him so that he could escort me out of the building. When I tried to take the stairs, Dr. ███ told me that, because I was wearing high heels, he wanted me to take the elevator with him;

e)   On or about October 12, 2012, Dr. ███ told me that his department was having a happy hour and pressured me to attend the same. As a result of Dr. ███ pressure, I agreed to attend the happy hour, and stayed in his lab doing work after class had ended. When no one showed up and I asked him where his colleagues were, Dr. ███ laughed and said that he forgot to invite anyone else;

f)   Dr. ███ brought a bottle of wine to his lab where I was working and said that the same was to "celebrate [my] birthday." While I worked, Dr. ███ drank a significant amount of wine to the point where I believe that he became intoxicated;

g)   While we were in the lab, Dr. ███ played love songs on his guitar and tried to pressure me to drink the wine that he brought;

h)   While he was in the lab and drinking wine, Dr. ███ asked me about my previous involvement with an Indonesian Cultural Club Dance Troupe, commented on the "asses" and "curves" of the dancers. He also talked about the "sexy" and "seductive" poses of the dancers and discussed "the effect that that has on a guy";

i)   While he was in the lab with me, Dr. ███ sat down next to me so closely that we were touching;

j)   As Dr. ███ conduct was making me very uncomfortable, I left the lab;

EEOC Charge of Discrimination
Page 3 of 5
Initials of Charging Party –

k)  On or about October 22, 2012, Dr. ▮▮▮▮ sent me a text message which read, "Dear Whitney, [a]fter many days in confusion, I believe I now know why I...essentially made a pass at you (for which I am very sorry, shaken and almost shocked by my lack of self-control). Over the past couple of months, I have come to appreciate my dear colleague (you)...the only person I' [sic] have ever team taught with. You have many awesome qualities: very smart, honest, sensitive, self-reflecting, extremely capable but endearingly vulnerable, fluent in French, great dancer, very pretty, and a person I respect enormously...and have come to care about more than I realized and more than I should have! The wine unleashed what my heart was feeling...and should not have! I promise I will never make you uncomfortable like that again! I was such an ass hold and am ashamed of my lack of self controll Respectfully and with warm regards, ▮▮▮";

l)  In or about late October, I complained to Dr. Amster and Dean Goldstein regarding the sexual harassment to which I was subjected. Dr. Amster reminded me how important Dr. ▮▮▮▮ was to Respondent's Speech Language Hearing Science Program;

m)  In response to my complaints, Dean Goldstein sent me Respondent's sexual harassment policy to review. He told me that Dr. ▮▮▮▮ needed me to "forgive him" and for me to acknowledge his apologies;

n)  Dean Goldstein also told me that the first thing that I needed to do was to confront Dr. ▮▮▮▮ I expressed to Dean Goldstein that I was very nervous about having to confront Dr. ▮▮▮▮ because of the way that he treated me, because of how popular he was at Respondent, and because he undermined me in front of the students in the class. Dean Goldstein responded by telling me that I needed to confront Dr. ▮▮▮▮ because it's policy";

o)  On or about November 2, 2012, I requested a meeting with Dr. ▮▮▮▮ after the class in which I assisted him was over. When I refused his offer to meet in his office, as I was uncomfortable being alone with him, he slammed something down on the counter in the class and yelled, "I don't believe this shit";

p)  When Dr ▮▮▮▮ and I walked outside, and I complained about the treatment to which he had subjected me, including on October 12, 2012, he was extremely hostile towards me, including screaming at me and telling me the following:

    (1)  "You drank wine, too";

    (2)  "You have been disrespectful and agggresive";

    (3)  "This is just as much your fault";

    (4)  You have been the professor from hell"; and,

    (5)  "You should look in the mirror if you don't want to be a hypocrite."

q)  Dr. ▮▮▮▮ also questioned me repeatedly as to who I told regarding his sexually harassing conduct;

r)  During our discussion, Dr. ▮▮▮▮ told me, for the first time, that he wanted me to restrict my attendance of his lectures in the class in which I was assisting him;



**EEOC Charge of Discrimination**
**Page 4 of 5**
**Initials of Charging Party –**

s)   After my discussion with Dr. ▊▊▊▊ I complained about the same to Dr. Amster. Dr. Amter's response was to tell me that Dr. ▊▊▊▊was just worried about his class and to remind me that he was very important to the Speech Language Hearing Science Program;

t)   On or about November 4, 2012, Dr. ▊▊▊▊emailed me and told me that, going forward, he wanted to change my assignment to only teach one (1) lecture session per week whereas my assignment since the commencement of the class, was to teach one (1) lab session per week. Dr. ▊▊▊▊also told me that he did not want me to attend any lecture sessions;

u)   Dr. Amster told me that Dr. ▊▊▊▊was very upset, and told me that I should agree to his terms to only teach one (1) lecture session per week, instead of the one (1) lab session for which I had responsibility and which I had been teaching since the commencement of the class;

v)   Pursuant to the pressure from Dr. Amster and Dean Goldstein, I agreed to limit my presence at Dr. ▊▊▊▊ class to one (1) lab session per week and to not attend any lecture sessions;

w)   Dr. Amster unjustly and harshly criticized my performance in a way that she had not done prior to my complaints;

x)   Dr. Amster treated me in a hostile manner;

y)   Dr. Amster interacted with me differently than she had prior to my complaints;

z)   No one at Respondent got back to me regarding my complaints about the sex discriminatory conduct, including sexual harassment, or retaliatory conduct to which I had been subjected;

aa)  I was told that Dr. ▊▊▊▊would continue teaching the class on which I had assisted him during the following academic year rather than me taking it over, contrary to what Respondent had represented when I commenced my employment;

bb)  On or about January 24, 2013, Dr. Amster and Dean Goldstein informed me that "a lot" of people were complaining about me, and that I had one (1) week to submit a "mini-dossier" regarding all of my accomplishments. At that time, the department faculty would vote on whether my employment would continue;

cc)  On or about February 11, 2013, I was informed that my contract was not going to be renewed for the following year;

dd)  Based on Respondent's continued discriminatory and retaliatory conduct, including their informing me that my contract would not be renewed after the completion of the semester, I informed Respondent that I was unable to return to work for the remainder of my contract;



**EEOC Charge of Discrimination**
**Page 5 of 5**
**Initials of Charging Party –**

ee)   After my discharge from employment, I complained to Respondent again regarding the discriminatory and retaliatory conduct to which I was subjected. Respondent's Human Resources Department indicated that it had On or about July 1, 2013, Respondent sent me a letter which stated that, "The investigation confirmed, by a preponderance of the evidence, that Dr. ████ engaged in unwelcome conduct of a sexual nature towards you. The University will take appropriate action in light of that finding, consistent with its strict-anti-harassment policy"; and,

ff)   Respondent's letter did not address what action it would take regarding its finding that I had been subjected to sexual harassment; why it failed to take any action regarding my prior complaints; or, the continued discriminatory and retaliatory conduct to which I had been subjected, including being told that my contract would not be renewed.

B.   1.   Respondent's Stated Reasons

(a)   Respondent has not provided an explanation for the hostile work environment to which I was subjected; and,

(b)   Respondent has not provided an explanation for its failure to renew my contract and its discharge of my employment.

C.   1.   Statutes and Basis for Allegations

I believe that Respondent has discriminated against me based on my sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and retaliated against me based on my complaints about the same, in violation of the above-referenced statutes, as set forth herein.

## INFORMATION FOR COMPLAINANTS & ELECTION OPTION
## TO DUAL FILE WITH THE
## PENNSYLVANIA HUMAN RELATIONS COMMISSION

### Whitney Postman v. LaSalle University

EEOC No. 530 2013-03470

RECEIVED - EEOC
PHILADELPHIA, D.O.
2013 JUL 23  P 4:40

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act.  Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination.  If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC.  You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding.  If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court.  PHRC will inform you of these rights and obligations at that time.
### [Sign and date appropriate request below]

__X__  I want my charge filed with PHRC.  I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint.  I request EEOC to transmit it to PHRC.

__X___  *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X    _____    7/21/13
          Signature and Date

_____    I do not want my charge dual filed with PHRC

_____
Signature and Date

Exhibit "2"

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Whitney Postman | From: | Philadelphia District Office |
|-----|-----------------|-------|------------------------------|
|     | Philadelphia, PA 19102 |   | 801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

|  | ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|-----------------|---------------------|---------------|
| 530-2013-03470 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|-----|------------------------------------------------------------------|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|-----|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

9/22/14
*(Date Mailed)*

cc: **LASALLE UNIVERSITY**
Caren N Gurmankin, Esq. (for Charging Party)
Carmon M. Harvey, Esq. (for Respondent)